Dear Mr. Songy:
Your request for an Attorney General's Opinion has been assigned to me for research and reply. On behalf of the Ascension Parish School Board, you have asked for our opinion concerning the grand prize won by G.W. Carver Primary School in the Children's Miracle Network fundraising drawing. The grand prize is a newly constructed house located in East Baton Rouge Parish which has recently been appraised at more than five hundred thousand ($500,000.00) dollars.
According to its website, the Children's Miracle Network is an alliance of premier children's hospitals whose mission is to generate funds and awareness programs for the benefit of children. Our Lady of the Lake Hospital located here in Baton Rouge, Louisiana, is one of 170 Children's Miracle Network (CMN) hospitals in North America. Local CMN funds have helped Our Lady of the Lake redesign its Children's Hospital, purchase technologically advanced equipment, expand the Children's Emergency Room and intensive care unit, and enhance educational materials for patients and their families. CMN funds have also helped with purchasing pediatric specialty books and videos and provided care for children who could not otherwise afford it.
Nationwide, Children's Miracle Network hospitals have:
 • Provided $2.5 billion in charity (uncompensated) care each year.
 • Treated 98% of all children needing heart or lung transplants.
 • Treated 88% of all children with cancer.
 • Treated 76% of all children with cystic fibrosis.
 • Treated 90% of all children with sickle cell anemia.
 • Treated 72% of all children with pediatric AIDS.
 • Devoted 60% of their services to children under age six and 25% to newborns.
 • Trained 60% of pediatricians and 80% of all pediatric specialists. *Page 2 
G.W. Carver Primary School ("G.W. Carver") is a primary grade school operated and maintained by the Ascension Parish School Board. Your request indicates that the students and employees of G.W. Carver raised funds by various means and methods to contribute/donate to the Children's Miracle Network. Those means and methods included, but were not limited to, penny drives, can shakes, "untuck for a buck" activities, etc. You indicate that all of the fundraising activities were done in the name and honor of a former student who died on the school's campus.
The proceeds of these various fundraising activities were eventually deposited into the school's bank account. Thereafter, a check for more than $3,600.00 was made payable to CMN. In return, CMN issued thirty-six (36) raffle tickets to G.W. Carver, in the name of the school. One of these thirty-six (36) tickets was subsequently drawn as the grand prize winner.
Based on these facts, you have asked us to determine whether there are any legal impediments to the Ascension Parish School Board accepting the grand prize. If the school board is free to accept the grand prize, you further ask whether the school board can then sell the subject house and use the proceeds as it deems appropriate. Alternatively, you ask whether the Ascension Parish School Board can donate the proceeds of such a sale back to the Children's Miracle Network.
In connection with your opinion request, our office has received additional information from various sources attempting to clarify or otherwise characterize the events surrounding G.W. Carver's participation in the CMN fundraising drawing. The response contained herein attempts to outline the legal authority applicable to the questions raised by your request, in light of the information submitted therewith.
In order to address the questions presented, we must first properly characterize the more than $3600.00 as being either private or public funds. Based on this characterization, we may then determine whether the payment made to CMN and subsequent acceptance of the thirty-six (36) raffle tickets was valid and legal.
According to your opinion request, the students and employees of G.W. Carver raised the more than $3600.00. None of the funds were generated by taxes, fees, or licenses. Instead, the funds were generated by various fundraising activities, some of which took place on the school's campus and during school hours. All of the funds in question were raised in the name and honor of a former student, donated to the school for the purpose of donating to or participating in CMN's fundraising drawing, and subsequently deposited into the school's account.
Our office has generally recognized that school boards, as political subdivisions of the State, may accept donations. See La.Const. art. VI, § 44(2), La.R.S. 17:381. We have also recognized that the acceptance of restrictive, or conditional donations is likewise acceptable. See
Attorney General Opinion Nos. 06-0229, 04-0063, 03-0320. Accordingly, as a political subdivision, we believe the Ascension Parish School Board, *Page 3 
acting through G.W. Carver, was free to accept the more than $3600.00 raised by its students and employees and deposit the same into the school's account. Further, in accord with our previous opinions, we believe the Ascension Parish School Board was obligated to transfer the more than $3600.00 to the CMN. We consider such an act to be consistent with the purpose for which the funds were generated and was legal and proper under Louisiana law.
Upon deposit into the school's account, the more than $3600.00 became public funds. See Attorney General Opinion No. 00-101 (opining that once the funds from date receipts, donations, pencil sales, fund raisers, etc., were placed in the general fund of the school account, these funds became public funds). Our office has consistently held that the expenditure of public funds must be addressed in light of Louisiana Constitution Article VII, Section 14, which provides in pertinent part the following:
 (A) Prohibited Uses. Except as otherwise provided by this constitution, the funds, credit, property, or things of value of the state or of any political subdivision shall not be loaned, pledged, or donated to or for any person, association, or corporation, public or private.
Art. VII, Sec. 14 clearly prohibits the donation of public funds. However, Louisiana Constitution Article VII, Sec. 14 (B) provides exceptions to the general prohibition against the gratuitous alienation of public funds. For example, Louisiana Constitution Article VII, Sec. 14 (B)(1) provides the following:
 (B) Authorized Uses. Nothing in this Section shall prevent (1) the use of public funds for programs of social welfare for the aid and support of the needy;. . .
In earlier interpretations of this Article, this office found that a political subdivision may contribute public funds to a systematic program of financial aid to the needy with objective eligibility requirements so that the plan truly serves only the needy. See Attorney General Opinion Nos. 76-57; 81-60. Based upon the information available to our office, we have reason to believe the Children's Miracle Network has in place an established program of financial assistance to the needy with objective eligibility criteria. Accordingly, we believe the transfer of the more than $3600.00 to the CMN satisfies the requirements of the Article VII, Section 14 (B)(1) and does not amount to a prohibitive donation.
Similarly, we believe there was no legal impediment to the acceptance of the thirty-six (36) raffle tickets. As stated above, public entities are free to accept donations. The funds in question were donated for the benefit of CMN and the tickets were issued as part of that donation. Accordingly, we are of the opinion that the Ascension Parish School Board, acting through G.W. Carver, was free to accept the thirty-six (36) raffle tickets, including the resulting winning ticket and the award of the grand prize. *Page 4 
In regards to selling the subject house, La.Rev.Stat. 41:891 provides the following:
§ 891. Sale of unused school lands
 Whenever the school board of any parish or city determines that any school lands or other immovable property under its control are no longer needed for school purposes and that the best interest of the public school system would be served by the sale of such lands, the school board shall have authority to dispose of such lands at public auction or under sealed bids in accordance with the procedure set forth in this subpart; provided that this subpart shall not apply to the sale of sixteenth section lands, school indemnity lands or any other school lands for the sale of which the law already has provided a procedure in Chapter 6 of Title 41 of the Louisiana Revised Statutes or elsewhere in the law.
It has been our opinion that school boards must follow the public bid procedure in accordance with La.Rev.Stat. 41:891 and 41:892 when selling excess lands. See Attorney General Opinion Nos. 88-331, 92-326, 98-420. Further, it has been our opinion that the ownership of the property and all of the rights of ownership should control the disposition of the proceeds derived from the sale of such property. See Attorney General Opinion No. 88-391. Thus, we are of the opinion that the Ascension Parish School Board may sell the subject house, all in accordance with the public bid law, La.Rev.Stat. 41:891 and 41:892. The proceeds of such a sale shall inure to the benefit of the Ascension Parish School Board and can be used as the school board deems appropriate.
With respect to donating the proceeds of such a sale, as noted above. Article VII, Section 14 of the Louisiana Constitution clearly prohibits the donation of public funds. However, we believe a donation to an organization such as the Children's Miracle Network satisfies the requirements of the Article VII, Section 14 (B)(1). Accordingly, we are of the opinion that the Ascension Parish School Board is free to make such a donation.
 CONCLUSION
In conclusion, it is the opinion of this office that the Ascension Parish School Board may accept the award of the grand prize in the Children's Miracle Network. The Ascension Parish School Board may sell the subject house, all in accordance with the public bid law, La.Rev.Stat.41:891 and 41:892. The proceeds of such a sale inures to the benefit of the school board and can be used as the school board deems appropriate. Any proposed donation of the proceeds of such a sale must comply with Louisiana Constitution Article VII, Section 14. *Page 5 
We trust this adequately responds to your request. If you should have any additional questions, please feel free to contact our office.
 Yours very truly,
 CHARLES C. FOTI, JR. Attorney General
 BY:__________________________ MICHAEL J. VALLAN Assistant Attorney General
 CCF, JR/MJV/crt